UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SHARON C. REDDY,

Plaintiff,

- against-

ALSTOM,

Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00426 (OEM)(LKE)

ORELIA E. MERCHANT, United States District Judge:

On October 25, 2025, plaintiff Sharon C. Reddy ("Plaintiff"), proceeding *pro se*, commenced this action against defendant Alstom ("Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), 42 U.S.C. § 1981, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796 ("Rehabilitation Act"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 ("ADA"), New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 ("NYSHRL"), and New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 ("NYCHRL"). *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl."). On April 1, 2026, Plaintiff voluntarily withdrew her claim under the Rehabilitation Act. *See* Plaintiff's Response in Opposition to Defendant's Motion for a Pre-Motion Conference, Dkt. 20, at 3.

Before the Court is Defendant's fully briefed motion to dismiss the Complaint. *See* Notice of Motion to Dismiss Plaintiff's Complaint, Dkt. 26 ("Motion"); Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Dkt. 26-1 ("Mem."); Affirmation in Opposition to Defendant's Motion to Dismiss, Dkt. 31 ("Opposition" or "Opp'n"); and

Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Dkt. 32 ("Reply").

For the following reasons, Defendant's Motion is denied in its entirety.

**BACKGROUND**

Plaintiff self-identifies as Indian. Compl. at 4. On or about January 16, 2020, while working for Defendant, Plaintiff sustained work-related injuries covered under the New York State Workers' Compensation Law. *See id.*; *see also* Opp'n at 2; Mem. at 2. Plaintiff thereafter filed a claim with the Workers' Compensation Board—WCB Case Number G2720119 ("WCB Claim"). *Id.*

On or about December 17, 2022, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the bases of race, color, and disability, as well as retaliation. *See* Compl. at 6; Notice of Charge of Discrimination, Dkt. 26-5 ("EEOC Charge")[1]. The EEOC Charge alleges that: (1) in September 2020, Plaintiff returned to work after an absence of several months due to her work-related injury; (2) in August 2022, following another absence attributable to the same injury, Plaintiff returned with a doctor's note "for full duty[,] but was told by HR [that she] couldn't return to work without a new doctor's note with specific [accommodations] although none were requested by [her] doctor;" and (3) in October 2022, "the same incident [occurred] like August 2022"—HR told Plaintiff that she "[didn't] belong [at the job]" because she was receiving workers' compensation and that Defendant

[1] As the EEOC Charge is unpaginated, citations to the EEOC Charge refer to the paginations of the automatically generated ECF headers.

would "get rid of [Plaintiff's] position," and Plaintiff thereafter did not work for approximately an additional seven days. EEOC Charge at 12.

On March 10, 2025, while represented by counsel, Plaintiff executed a settlement agreement with Defendant through its carrier, ACE American Insurance Co. c/o Gallagher Bassett Services Inc., pursuant to Section 32 of the Workers' Compensation Law. Opp'n at 2; *see also* Mem. at 2; Settlement Agreement, Dkt. 26-4. That same day, Plaintiff also executed a Resignation of Employment. Opp'n at 6; Resignation of Employment, Dkt. 26-8.

On July 28, 2025, the EEOC issued Plaintiff a Notice of Right to Sue ("NRTS"). *See* Determination and Notice of Rights, Dkt. 1-1. On October 25, 2025, Plaintiff commenced this action against Defendant, alleging that, after taking time off because of her work-related injury, she returned with a doctor's note stating that she should perform light duty. Compl. at 5. According to Plaintiff, Defendant refused to accommodate that restriction, told her that no light duty was available, and informed her that she could keep her job only if she obtained a doctor's note authorizing full duty. *Id.* Nevertheless, Defendant assigned Plaintiff to full duty while assigning other employees who had been injured, all of whom were African American, to light duty. *Id.* Plaintiff alleges that Defendant's refusal to accommodate her disability caused her to lose wages, take additional time off, and eventually resign. *Id.* at 6.

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hogan*

*v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Hogan*, 738 F.3d at 514. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court accepts factual allegations as true, but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Where, as here, a plaintiff proceeds *pro se*, this Court must construe the complaint "liberally" at the motion to dismiss stage. *Adams v. Delta Airlines, Inc.*, 16-CV-1986 (KAM) (LB), 2018 WL 1532434, at *3 (E.D.N.Y. Mar. 29, 2018) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). This means that the court must interpret a *pro se* complaint "to raise the strongest arguments that [it] suggest[s]." *Adams*, 2018 WL 1532434, at *3 (quoting *Pabon v.*

*Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Nonetheless, to survive a motion to dismiss, a *pro se* complaint "must contain sufficient factual allegations to meet the plausibility standard." *Id.*

## DISCUSSION

Defendant moves to dismiss the Complaint. First, Defendant argues that the Settlement Agreement bars Plaintiff's claims because she knowingly and voluntarily waived and released those claims. Mem. at 6. Second, Defendant argues that Plaintiff's voluntary resignation independently defeats her retaliation claim because she cannot establish an adverse employment action. *Id.* at 4. Plaintiff responds that, by signing the Settlement Agreement, she did not agree to waive the federal and state law discrimination claims raised in this action, and that no provision in the Agreement waives these causes of action. Opp'n ¶ 15. Plaintiff further contends that she agreed to waive only claims related to the physical injury she directly sustained from the January 16, 2020 workplace incident, and not any claim for employment discrimination. *See id.* ¶ 19. Regarding her resignation, Plaintiff argues, *inter alia*, that she "agreed to resign because [she] could no longer work for a company that failed to accommodate [her] disability, [and] imposed unequal terms and conditions of employment different from similarly situated employees of another race." *Id.* ¶ 24.

### A. Waiver and Release

"A release is a species of contract and 'is governed by principles of contract law.'" *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 (2d. Cir. 2001) (quoting *Bank of Am. Nat'l Tr. and Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 715 (2d Cir.1985)).[2] A release entered into by an employee

[2] "In determining the scope and validity of a release, courts should apply state law." *Consol. Edison*, 332 F. Supp. 2d at 646; *see Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order) ("We consider New York law and federal cases applying New York law in interpreting the release."). There is no dispute that New York law applies to the interpretation of the Settlement Agreement. "A federal court sitting in New York ordinarily applies New York's choice of law rules in deciding what law governs the interpretation of a contract." *Weiss v. La Suisse*, 313 F. Supp. 2d 241, 244 (S.D.N.Y. 2004). "[U]nder both federal and New York choice-of-law principles, the interpretation of a contract is governed by the law of the jurisdiction that has the greatest interest in the litigation,

"knowingly and voluntarily" may waive that employee's claims against their employer under federal antidiscrimination laws; however, courts uphold only those such releases that are "clear and unambiguous on [their] face[s]." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 155 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 1501, 223 L. Ed. 2d 507 (2026) (quoting *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) ("Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.").

In construing a release, courts "may not frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties. Instead, [courts] give the words of the agreement their ordinary and plain meaning." *Paraco Gas Corp. v. Ironshore Indem., Inc.*, 22-CV-5557 (CS), 2023 WL 4134661, at *4 (S.D.N.Y. June 22, 2023), *aff'd*, 23-CV-1069, 2024 WL 3024658 (2d Cir. June 17, 2024); *see also Binstein v. Haven Indus., Inc.*, 74 CIV. 4792, 1978 WL 1121, at *7 (S.D.N.Y. Oct. 26, 1978) ("In construing the scope of the releases, this court, must as a matter of New York law, give effect to the parties' intent as demonstrated by the language of the releases themselves.")

A release requires an "explicit, unequivocal statement of a present promise to release a defendant from liability," *Golden Pac. Bancorp*, 273 F.3d at 515 (applying New York law), and "may not be read to cover matters which the parties did not desire or intend to dispose of," *Detouche v. JTR Transp. Corp.*, 17 CIV. 7719, 2020 WL 7364116, at *6 (S.D.N.Y. Dec. 14, 2020) (applying New York law). The "intent of the parties is 'ascertained by a fair and reasonable construction of the [contract's] written words,'" *Id.* (quoting *Lee v. BSB Greenwich Mortg. Ltd.*

---

which is the jurisdiction where the 'center of gravity' of the transaction is located." *Zanghi v. Ritella*, 19 CIV. 5830 (NRB), 2021 WL 4392756, at *8 (S.D.N.Y. Sep. 24, 2021) (citing *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999)). Here, given that: (1) the Settlement Agreement was executed pursuant to New York State Workers' Compensation Law Section 32; (2) both parties are citizens of New York; and (3) the events giving rise to the causes of action asserted in the Complaint occurred in New York, *see* Compl. at 2-5; Mem. at 2; Opp'n ¶ 7, New York is the center of gravity of this transaction. Accordingly, New York law governs the interpretation of the Settlement Agreement.

*P'ship*, 267 F.3d 172, 179 (2d Cir. 2001)), "in the context of the contract as a whole." *Mackenzie v. New York City Dep't of Educ.*, 21-CV-5711 (LTS), 2023 WL 2711848, at *8 (S.D.N.Y. Mar. 30, 2023); *see also A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319 (S.D.N.Y. 2013) ("Under New York law, in construing a contract, the parties' intent is derived from the plain meaning of the language employed in the agreements when the agreements are read as a whole.")

The parties do not dispute that Plaintiff knowingly and voluntarily executed the Settlement Agreement. *See* Opp'n ¶ 7; Mem. at 7. However, that does not determine the scope of the release. A voluntary agreement to settle a workers' compensation claim does not, without more, establish an agreement to release separate statutory claims arising from the employer's treatment of the employee. *See Detouche*, 2020 WL 7364116, at *6 (finding plaintiff's statutory claims were not waived by the plain language of a settlement agreement resolving "all prospective claims *addressed in* the proposed [Settlement Agreement]" and the agreement only addressed plaintiff's workers' compensation claims (emphasis in original)).

Here, the Agreement expressly identifies the WCB Claim as its subject. Under the "Waiver Agreement Conditions" section of the "WAIVER AGREEMENT – Section 32 WCL," the parties were required to "[i]ndicate whether the waiver agreement settles all or some of the issues in the claim(s)]." Settlement Agreement at 3.[3] The parties selected the provision that states that the Agreement "[s]ettles all issues and matters in the claim(s) identified by the WCB Claim number(s) above." *Id.* The Agreement describes the identified matter as "an established claim for an injury to the neck, lumbar spine, and right ankle occurring on 01/16/2020." *Id.* at 4. The operative waiver provision likewise ties the rights released to Plaintiff's WCB Claim. It provides that "the claimant, except for payments called for in this Section 32 Agreement, waives any all rights under the

[3] Citations to the Settlement Agreement refer to the paginations of the automatically generated ECF headers.

***Workers' Compensation Law*** against [Defendant] in connection with the above-captioned claim." *Id.* at 5 (emphasis added). Thus, the waiver identifies both the source of the rights being relinquished—the Workers' Compensation Law—and the claim to which it applies—the WCB Claim. It does not state that Plaintiff releases claims under federal, state, or local antidiscrimination laws, or all claims arising from her employment and its termination.

Defendant's reliance on the Agreement's more general release language does not overcome its express limitations. Paragraph 12 states that "[c]laimant asserts they have no other outstanding claims against [Defendant]." *Id.* ¶ 12. Paragraph 14 provides that the Agreement, once approved by the Workers' Compensation Board, "is final and binding on all parties and is not subject to appeal to, or review by, any court of law or equity except with the consent of all parties." *Id.* ¶ 14. It also states that the Agreement resolves "this claim and any actual or potential issues presented by this claim on a final and conclusive basis," and that "[t]he matter is now closed." *Id.* These provisions must be read together with the Agreement's identification of the claim being settled and the rights being waived. *See Accelerant Partners, LLC v. Applied Fiber Holdings, LLC*, 21-CV-5014 (LJL), 2021 WL 6113375, at *6 (S.D.N.Y. Dec. 27, 2021) ("[A] contract should be read as a whole, with every part interpreted with reference to a whole.") (applying New York law). Language making the settlement of "this claim" final does not itself enlarge the claim's subject matter. Nor does the reference to rights "for periods past, present or future," on which Defendant relies, answer the separate question of which rights the Agreement releases. Mem. at 1; *see Toth v. New York City Dep't of Educ.*, 21-CV-4245 (AMD) (RER), 2023 WL 121733, at *6 (E.D.N.Y. Jan. 5, 2023) ("[C]onsistent with the principle of *ejusdem generis*, 'the general words of a release are limited by the recital of a particular claim.'") (quoting *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 647 (S.D.N.Y. 2004)); *Vines v. Gen. Outdoor Advert. Co.*, 171 F.2d 487, 492 (2d

Cir. 1948) ("[I]n a release[,] words of general import, followed or preceded by words relating to specific claims, are, *ceteris paribus*, limited to the specific claims.").

In *Megginson v. City of New York*, the court explained that general release language is limited by the recital of a particular claim "where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged." 821 F. Supp. 3d 291, 307 (E.D.N.Y. 2026) (applying New York law); *see also Augustin v. City of New York*, No. 15290/2014, 2022 WL 1081235, at *3 (N.Y. Sup. Ct. Mar. 31, 2022) ("[A]lthough the release language is broad, the inclusion of only the *Augustin I* case caption and index number can be read as a limiting factor upon which the release language applied."). Here, the inclusion of the WCB case number on nearly every page of the agreement supports Plaintiff's argument that the parties only intended to settle that action. *Megginson*, 821 F. Supp. 3d at 307 (same). The repeated identification of the WCB Claim, together with the express waiver of rights "under the Workers' Compensation Law," supplies the context in which the general language must be read. The assertion that Plaintiff has no other outstanding claims does not expressly promise to withdraw her pending EEOC charge or release the discrimination claims asserted in this action. Read as a whole, the Agreement does not clearly establish the broader release that Defendant is in favor of.

*Detouche* is particularly instructive. There, the court held that a workers' compensation settlement did not bar the plaintiff's federal discrimination claims because "[b]y its terms, the Settlement Agreement addresse[d] only Plaintiff's workers' compensation claims and [could not] be read as a waiver of Plaintiff's statutory claims." 2020 WL 7364116, at *7. The court explained:

> "[T]he plain language of the Release, in the context of the Settlement Agreement as a whole, does not demonstrate that the parties intended for Plaintiff to abandon his pending federal action by executing the Settlement Agreement. Defendant points to a provision of the Release which states that the Settlement Agreement resolves "all claims and

> prospective claims addressed in the proposed [Settlement Agreement]." Further, as Defendant notes, the Settlement Agreement addresses Plaintiff's workers' compensation claims, including those raised in WC Case G1209196. No portion of the Settlement Agreement references Plaintiff's Title VII or NYSHRL claims…"

*Id.* (internal citations omitted). The same distinction applies here. The Agreement settles the identified WCB Claim and the issues presented by that claim, which is "an established claim for an injury to the neck, lumbar spine, and right ankle occurring on 01/16/2020." Settlement Agreement at 4. It does not clearly extend the release to Plaintiff's separate claims concerning discrimination, accommodation, and retaliation.

The Agreement here differs materially from the agreement enforced in *Warden v. E.R. Squibb & Sons, Inc.*, 840 F. Supp. 203 (E.D.N.Y. 1993). There, the employee expressly released claims based on "rights under federal, state, or local laws prohibiting age or race or other forms of discrimination," as well as "claims growing out of his employment and its termination or any other legal restrictions on [defendant's] right to terminate its employees." *Id.* at 205. The *Warden* court explained:

> "It is clear that the general purpose of the agreement is to settle plaintiff's various claims of discrimination and retaliation. Claims for workers' compensation benefits are not explicitly waived in any provision. In contrast, plaintiff specifically agrees to withdraw pending charges of discrimination and retaliation and explicitly releases claims of discrimination..."

*Id.* at 206–07. *Warden* thus illustrates the significance of language affirmatively releasing employment discrimination claims. The Agreement here contains no comparable language. However, the Court's conclusion does not rest merely on the omission of particular statutory names; it rests on the Agreement's express limitation to the identified workers' compensation claim and the absence of language clearly extending the release beyond that subject.

Defendant further argues that Paragraph 9 of the Agreement expressly preserves Plaintiff's separate third-party negligence action against the Port Authority of New York and New Jersey but

contains no comparable exception for her then-pending EEOC charge or discrimination claims. Mem. at 8. According to Defendant, that omission demonstrates that the parties intended to release the claims asserted here. *Id.*

Defendant's argument is unavailing. An express exception for one legal action does not, by itself, expand the operative release to encompass all other claims. *See Detouche,* 2020 WL 7364116, at *6 (explaining that a release requires an "explicit, unequivocal statement of a present promise to release a defendant from liability" and "may not be read to cover matters which the parties did not desire or intend to dispose of."). The absence of an exception for discrimination claims does not provide the affirmative expression of Plaintiff's intent to release them that is missing from the Agreement's provisions.

*Megginson* reinforces that distinction. In declining to extend a release to a claim under 42 U.S.C. § 1983, the court contrasted the agreement before it with the release in *Smith v. City of New York*, 45 N.Y.3d 1025, 1026–27 (2025), where "the general terms of release were augmented by an exclusion clause clearly directing the releasor, in bold and all caps, to list any claims he wished to exclude, and warning that the release would cover any outstanding claims not excluded specifically by name." *Megginson*, 821 F. Supp. 3d at 309. Defendant identifies no comparable direction or warning here. Nor does Plaintiff's counsel's attestation alter the analysis. Counsel stated that "[t]here are no outstanding issues in this/these claim(s) which are not fully resolved by the terms of that Agreement, except for those issues expressly left open by the Agreement." Mem. at 8. By its terms, that statement addresses issues within "this/these claim(s)," which confirms the completeness of the resolution of the identified WCB Claim, rather than an agreement to settle every dispute between the parties.

Accordingly, the Settlement Agreement does not establish a clear and unambiguous release of Plaintiff's remaining federal discrimination claims. Therefore, Defendant's motion to dismiss those claims on the basis of waiver and release is denied.

**B. Retaliation**

Defendant separately argues that Plaintiff's retaliation claim must independently fail because the Settlement Agreement includes a separately bargained-for resignation, in which Plaintiff acknowledges that her resignation was made "freely and voluntarily." Mem. at 4. Therefore, Defendant argues, Plaintiff cannot establish an adverse employment action. *Id.* Even accepting Defendant's characterization of the resignation, that argument does not account for the adverse conduct that Plaintiff alleges occurred before she resigned.

To establish a prima facie case of retaliation, a plaintiff "must show that [they] engaged in a protected activity, that [they] suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Licinio v. New York*, 24-CV-2564, 2025 WL 1693108, at *1 (2d Cir. June 17, 2025), cert. denied, 146 S. Ct. 1516 (2026). Defendant's independent ground for dismissal concerns whether Plaintiff's voluntary resignation precludes her from alleging an adverse employment action. Mem. at 9-11.

Although, "resignations are presumed to be voluntary, and therefore do not generally constitute adverse employment actions," *Marraccini v. Belmont*, 19-CV-8458 (VB), 2020 WL 5505364, at *6 (S.D.N.Y. Sep. 10, 2020) (citation omitted), actionable retaliation is not limited to a termination or other ultimate employment decision. *Thompson v. Brookdale Univ. Hosp. & Med. Ctr.*, 14-CV-5317 (WFK) (VMS), 2015 WL 7738018, at *4 (E.D.N.Y. Dec. 1, 2015) ("[A]n adverse employment action is not confined to termination or failure to promote.") (internal quotation marks omitted). "In the context of a Title VII retaliation claim, an adverse employment action is any

action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 25-CV-1697, 2026 WL 2819692, at *7 (2d Cir. Sept. 21, 2026).[4] Retaliation "require[es] a showing of material adversity" and "consider[s] the perspective of a reasonable employee." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). Thus, "the standard [is] objective, but context matters." *Id.* (internal quotation marks omitted). "[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.* (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir.2006)). In *Guity v. Uniondale Union Free Sch. Dist.*, the court identified examples of adverse employment actions, including "a demotion evidenced by a decrease in wage or salary," "a material loss of benefits," and "other indices ... unique to a particular situation," while emphasizing that "each case must be reviewed in context under the [*Burlington*] standard." 12-CV-1482 (SJF) (AKT), 2014 WL 1330636, at *17 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted).

Here, Plaintiff alleges that she "lost wages due to the company not accommodating [her] for light duty," which "caus[ed] [Plaintiff] to take time off and resign." Compl. at 6. She also alleges that Defendant refused to provide her with light duty while providing it to other employees. *Id.* at 5. Liberally construed, these allegations identify adverse conduct that came before, and is distinct from, the resignation—namely, Defendant's alleged refusal to accommodate Plaintiff prevented her from working and caused her to lose wages. That alleged loss of work and pay

---

[4] "Claims for retaliation under Title VII and the NYSHRL apply the same standard." *Fox v. Northwell Health*, Inc., 22-CV-4512 (SIL), 2025 WL 2782481, at *7 (E.D.N.Y. Sept. 29, 2025); *Abromavage v. Deutsche Bank Secs. Inc.*, 21-CV-668, 2022 WL 4360950, at *1 (2d Cir. 2022) ("Title VII and NYSHRL retaliation claims are analyzed under the same standard."). Meanwhile, "NYCHRL has a more protective standard than Title VII and NYSHRL," and "[a]s a result … NYCHRL must be construed broadly and in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Howard v. Consol. Edison Co. of New York, Inc.*, 17-CV-364 (ENV) (LB), 2021 WL 395868, at *12 (E.D.N.Y. Feb. 4, 2021), *aff'd*, 22-CV-1706, 2023 WL 8270808 (2d Cir. Nov. 30, 2023), and *aff'd*, 22-CV-1706, 2023 WL 8270808 (2d Cir. Nov. 30, 2023) (internal quotations omitted). Defendant's resignation argument therefore provides no basis to dismiss the NYSHRL or NYCHRL retaliation claims either.

provides a basis for material adversity independent of whether Plaintiff's later resignation was voluntary.

*Gonzalez v. New York City Transit Auth.* is directly instructive: "For the purposes of this matter, the Court finds that plaintiff's allegation that she was wrongfully excluded from work and lost pay as a result, constitutes an adverse employment action." 06-CV-761 (RJD) (LB), 2008 WL 924934, at *10 (E.D.N.Y. Mar. 31, 2008), *aff'd*, 369 F. App'x 173 (2d Cir. 2010). Plaintiff's allegations here similarly describe a material economic consequence that could dissuade a reasonable employee from making or supporting a discrimination charge. Plaintiff's claim, therefore, does not depend solely on treating the resignation itself as an adverse action. *Cf. Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir.2010) (entering summary judgment for defendant-employer and holding that "aside from [plaintiff's] voluntary resignation, she identifies no adverse employment action taken against her. To the contrary, the complaint alleges that [plaintiff] was promoted during the relevant period and was implored by defendant[ ] to stay when she announced her intention to resign. As such, she cannot establish a claim for unlawful retaliation.").

Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claim on the basis of her voluntary resignation is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied in its entirety.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

October 27, 2026
Brooklyn, New York